IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **AMERCO REAL ESTATE COMPANY,** | : | **Civil No. 1:21-CV-00628** |
| | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **FIRST AMERICAN TITLE INSURANCE COMPANY,** | : | |
| | : | |
| **Defendant.** | : | **Judge Sylvia H. Rambo** |

# M E M O R A N D U M

Before the court is Defendant First American Title Insurance Company's motion to dismiss for failure to state a claim. (Doc. 8.) For the reasons set forth below, the motion will be granted.

## I.    BACKGROUND

On June 28, 2019, Plaintiff Amerco Real Estate Company executed a Purchase and Sale Agreement ("PSA") with Seritage KMT Finance in which it agreed to purchase from Seritage certain real property located in Cumberland County, Pennsylvania for a price of $4.5 million. (*See* Doc. 1 ¶¶ 7–11; Doc. 1-3; Doc. 8-1.) The PSA purported to convey "Lot 1" of a Subdivision Plan for Walnut Bottom Towne Centre, consisting of 33.36 acres, less two units that had been previously conveyed to someone else. (*See* Doc. 1 ¶¶ 8–10; Doc. 1-2.) Seritage thereafter executed and provided to Amerco a special warranty deed, dated July 10,

2019, which described the property in the same terms as the PSA. (*See* Doc. 1 ¶ 11; Doc. 8-1 p. 5.)

At some point, Amerco learned that the property did not consist of all 33 acres in fee simple, but rather Units 4 and 5 of the condominium, together with the nonexclusive use of various common areas, including a parking lot. (*See id.* ¶¶ 13–29.) Despite this knowledge, Amerco thereafter acquired from First American a title insurance policy, which insured it against certain covered title risks in the amount of $4.5 million, and which described the property in the same terms as the special warranty deed and PSA. (*See* Doc. 1 ¶¶ 1–11, 23; Doc. 8 pp. 12–13; Doc. 8-5 pp. 7-8; Doc. 14 pp. 7-11; Doc. 15 pp. 3–7.)

The conversion of the property to condominium units and subsequent variance in the legal description of the land date back to 1995, when Kmart, the property's owner at the time, imposed a Declaration of Condominium on the land. (*See* Doc. 1 ¶¶ 19–21.) Specifically, the PSA and special warranty deed from Seritage to Amerco provides that the property is the same property conveyed in a 2015 deed from Kmart Corporation, as successor in interest to Troy CMBS Property, LLC by merger, to Seritage. (*See id.* ¶¶ 11, 17–20.) That 2015 deed, like the subsequent special warranty deed, described the property as consisting of approximately 33 acres, and also stated that the land conveyed was the same as that conveyed in a 1997 deed from Kmart Corporation to Troy CMBS Property, L.L.C. (*See id.* ¶¶ 17–21.) The

1997 deed, like the subsequent deeds, described the premises as consisting of around 33 acres and also stated that the property was the same land that was conveyed in a 1995 deed from MeedPenn Group to Kmart Corporation. (*Id*.) But that latter representation was not accurate, and it was not actually the same land MeedPenn Group conveyed to Kmart. (*Id.* ¶ 21.)

As it turns out, after Kmart acquired the full 33 acres in 1995, but before it conveyed the supposed "same" land to Seritage in 2015, Kmart imposed a "Declaration of Condominium" on the property, the terms of which divided Lot 1 into Units 1-5, "limited common elements" and "common elements," and established the Walnut Bottom Town Centre Condominium Association to operate the condominium. (*See id*. ¶¶ 21–22; Doc. 8-2 pp. 9, 26.) Each unit owner, or fractional unit owner, held a particular interest in the common elements of the property and voting rights in the association. (*Id*.) After redesignating the units, Kmart eventually returned Unit 1, Unit 2, and Unit 3 to MeedPenn, before conveying Unit 4 and Unit 5 to Seritage. (Doc. 1 ¶ 21.)

All told, this meant that the conveyance from Seritage to Amerco, while purporting to transfer "Lot 1," actually transferred Unit 4 and Unit 5 of the condominium in fee simple, together with nonexclusive use of the various common areas. (*See id.* ¶¶ 15, 29, 30.) According to the complaint, the difference in value

between what was bargained for and what was conveyed is approximately $1.7 million. (*Id.* ¶ 30.)

In May 2020, Amerco submitted a Notice of Claim to First American for the purported loss. (*Id.* ¶ 32.) Several months later, First American denied the claim pursuant to exclusion 3(c) of the policy, which excludes coverage for "defects, liens, encumbrance, adverse claims or other matters…resulting in no loss or damage to the Insured Claimant." (*See id.* ¶¶ 32–35.)

On April 5, 2021, Amerco initiated this action by filing a complaint, which asserts claims for breach of contract, contractual and tortious breaches of the covenant of good faith and fair dealing, bad faith, and unfair trade practices. (Doc. 1.) First American has filed a motion to dismiss the complaint for failure to state a claim, which argues that the language of the policy excepts coverage for Amerco's losses.  (Doc. 8.) The motion has been fully briefed and is ripe for review.

## II.   <u>STANDARD OF REVIEW</u>

To survive a motion to dismiss under Rule 12(b)(6), the plaintiff must allege "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). In reviewing a 12(b)(6) motion, the court must "accept as true all well-pled factual allegations in the complaint and all reasonable inferences that can be drawn from them." *Taksir v.*

*Vanguard Grp.*, 903 F.3d 95, 96–97 (3d Cir. 2018) (citation omitted). But "[t]he court is not required to draw unreasonable inferences" from the facts. 5B Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1357 (3d ed. 2004). The court may also consider "exhibits attached to the complaint" and "undisputedly authentic" documents when the plaintiff's claims are based on the documents that the defendant has attached to the motion to dismiss. *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

The Third Circuit has detailed a three-step process to determine whether a complaint meets the pleading standard. *Bistrian v. Levi*, 696 F.3d 352 (3d Cir. 2014). First, the court outlines the elements a plaintiff must plead to state a claim for relief. *Id.* at 365. Second, the court must "peel away those allegations that are no more than conclusions and thus not entitled to the assumption of truth." *Id.* Third, the court "look[s] for well-pled factual allegations, assume[s] their veracity, and then 'determine[s] whether they plausibly give rise to an entitlement to relief.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679). The last step is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

## III.   **DISCUSSION**

First American's motion requests dismissal of Amerco's claim for breach of contract. Under Pennsylvania law, a claim for breach of contract must raise the inference of: "(1) the existence of a contract, including its essential terms; (2) a

breach of the contract; and (3) resultant damages." *Meyer, Darragh, Buckler, Bebenek & Erk, P.L.L.C. v. Law Firm of Malone Middleman, P.C.*, 635 Pa. 427, 445 (2016).

As with all contracts, when interpreting an insurance policy, the court must determine the intent of the parties "as manifested by the terms used in the written insurance policy." *401 Fourth Street, Inc. v. Investors Ins. Group*, 583 Pa. 445, 454, 879 A.2d 166, 171 (2005); *Firemen's Ins. Co. of Washington, D.C. v. Tray-Pak Corp.*, 130 F. Supp. 3d 973, 979–80 (E.D. Pa. 2015) (quoting *Meyer v. CUNA Mut. Ins. Soc'y*, 648 F.3d 154, 163 (3d Cir. 2011)). Contracts for insurance must be read as a whole and in the context of the plain meaning of its terms. *See Am. Auto. Ins. Co. v. Murray*, 658 F.3d 311, 320 (3d Cir. 2011). If a policy clearly and unambiguously sets forth the respective obligations of the parties, its terms must be enforced as written. Any ambiguous language, however, must be construed in favor of the insured. *Id.* at 321. "Ambiguity exists where the language of the contract is "reasonably susceptible of different constructions and capable of being understood in more than one sense." *General Refractories Company v. First State Insurance Co*, 855 F.3d 152, 159 (3rd Cir. 2017) (citing *Madison Const. Co. v. Harleysville Mut. Ins. Co.*, 735 A.2d 100, 106 (Pa. 1999)).

Here, Amerco pleads all the elements of a contract claim, as the complaint alleges that First American breached the title insurance policy, which provides

coverage for certain title issues, by failing and refusing to settle its insurance claims under the policy, and by failing to conduct a proper title search, and that as a result of the breach, it has suffered a loss between the value of the land and what it bargained for. (*See* Doc. 1 ¶¶ 7, 32-36.)

The coverage afforded under the policy is nevertheless limited by certain specific exceptions and exclusions, including Schedule B, Exception 12 of the policy, which provides:

> This Policy does not insure against loss or damage, and the Company will not pay costs, attorneys' fees or expenses that arise by reason of . . . covenants, conditions, restrictions, easements, limitations, reservations, terms, lien rights, provisions and charges, including, but not limited to, the use of, and the rights of others in and to the use of common elements, as set forth in the Declaration of Condominium, recorded 07/07/1995 as Record Book 499 Page 535, Amendment as set forth in Record Book 544 Page 94, Second Amendment as set forth in Instrument No. 200931565, Third Amendment to Declaration of Condominium of Walnut Bottom.

(Doc. 1-3 p. 6.)

First American contends that the plain and unambiguous language of this provision excepts Amerco's claim for insurance and in turn requires dismissal of its breach of contract claim. (*See* Doc. 8 pp. 11–13.) According to First American, the contract claim relies entirely on Amerco's allegation that it suffered a loss from not receiving certain common elements of the property in fee simple. (*Id*.) And since there is no fact dispute that Amerco's lack of complete ownership of the common

elements arises directly from the terms of the Declaration of Condominium, First American's argument goes, Amerco's claim for insurance indisputably "arise[s] by reason of" the "covenants, conditions, restrictions, easements, limitations, reservations, terms, lien rights, provisions, and charges … as set forth in the Declaration of Condominium." (Doc. 1-3 p. 6.) This argument is correct.

In Pennsylvania, a policy provision containing the phrase "arising out of" is satisfied through the relatively *de minimus* standard of but-for causation. *Gen. Refractories Co.*, 855 F.3d at 155, 159 (citing *Mfrs. Cas. Ins. Co. v. Goodville Mut. Cas. C*o., 403 Pa. 603, 607–08 (1961)). The language of the title insurance policy, however—arising "by reason of"—has been construed by courts as more akin to proximate cause. *Slate Bar & Lounge, Inc. v. Founders Ins. Co.*, No. 3:15-CV-2251, 2017 WL 4681311, at *6 (M.D. Pa. Oct. 18, 2017) (citing *Caterpillar, Inc. v. Int'l Union*, 107 F.3d 1052, 1068–69 (3d Cir. 1997) (Mansmann, J., dissenting) (noting that dictionaries define the phrase "by reason of" to mean "because of" or "on account of," and that the phrase refers at a minimum to a "major reason" for a condition taking place and not a minor but-for cause); By reason of, Black's Law Dictionary 201 (6th ed. 1990) (defining "by reason of" as "[b]ecause of," or "[b]y means, acts, or instrumentality of"); *McNeilab, Inc. v. N. River Ins. Co.*, 645 F. Supp. 525, 535 (D.N.J. 1986) ("The causal connection implied by the phrase 'by reason of' is normally that of proximate causation.")).

Undoubtedly, the restrictions set forth in the Declaration of Condominium were a but-for cause of Amerco's purported injury, which could not have occurred without the Declaration of Condominium terminating the existence of Lot 1 and creating the Walnut Bottom Towne Center in its stead. But the pleadings and documents attached to and relied on in the complaint also make clear that Amerco's injury and attendant claim for benefits under the policy were substantially and proximately caused by the terms and other restrictions set forth in the Declaration of Condominium. Amerco's insurance claim is entirely predicated on its argument that it suffered loss by failing to receive and own certain parts of the property, which are now common elements, in fee simple. (*See* Doc. 1 ¶¶ 13–22.) And there can be no serious dispute that the terms and restrictions found in the Declaration of Condominium—the singular document that converted those pieces of land to common elements—were a "substantial factor" in and major reason for the harm Amerco alleges to have suffered. *See e.g*, *Ramara, Inc. v. Westfield Ins. Co*., 814 F.3d 660, 675 (3d Cir. 2016) (quoting *Bouriez v. Carnegie Mellon Univ*., 585 F.3d 765, 771 (3d Cir. 2009)); *Scirex Corp. v. Fed. Ins. Co*., 313 F.3d 841, 849 (3d Cir. 2002) (contrasting "sole cause" or "immediate cause" with "proximate or substantial" cause) (citing *Jefferson Bank v. Progressive Casualty Ins. Co*., 965 F.2d 1274 (3d Cir. 1992)); *Hamil v. Bashline*, 481 Pa. 256, 392 A.2d 1280, 1284 (1978).

Amerco's complaint and brief repeatedly recognize the primary role the Declaration of Condominium played in causing its loss and fail to meaningfully allege or argue the existence of any intervening cause that may have broken the chain of causation. (*See* Doc. 1 ¶¶ 21–22; Doc. 14 pp. 6–10.) While Amerco does allege in the complaint that First American breached a duty to conduct a good title search, it does so only in conclusory terms and without tying the alleged breach to any actual language in the policy. (*See* Doc. 1 ¶¶ 26–27.) More importantly, even if Amerco could substantiate its allegation that First American completed a shoddy title search, it would mean little in the face of substantial documentary evidence attached to and relied on in the complaint, which demonstrates that Amerco purchased the underlying policy knowing full well that the property consisted of Unit 4 and Unit 5 of a condominium unit with shared common space.[1] (*See* Doc. 8 pp. 12–13; Doc. 8-5 pp. 7-8; Doc. 14  pp. 7-11; Doc. 15 pp. 3–7.)

Exception 12 in Schedule B is clear and unambiguous. Its terms are communicated in plain English that most laypersons would understand, such that no reasonable person would interpret them as not excepting coverage for losses based on the insured's failure to take ownership of certain areas of the property that were converted to common elements under the terms of the Declaration of Condominium.

---

[1] Though the issue need not be decided as a matter of law, Amerco's knowledge in this respect may have provided First American with an independent reason to except or exclude benefits under the policy. (*See* Doc. 8 pp. 12-13; Doc. 15 pp. 3-7.)

Amerco's complaint and brief do not offer any reasonable alternative construction of the exception or broader insurance policy that would result in coverage, and First American is therefore entitled to dismissal of Amerco's breach of contract claim.

Finally, Amerco's remaining claims must also be dismissed. First American's right to except coverage under the policy precludes Amerco from establishing that coverage was denied recklessly and in bad faith, or that First American breached the covenant of good faith and fair dealing.[2] *See Zaloga v. Provident Life and Acc. Ins. Co. of America*, 671 F.Supp.2d 623, 634 (M.D. Pa. 2009) (requiring the plaintiff to show that the insurer did not have a reasonable basis for denying benefits under the policy) (citing *Klinger v. State Farm Mut. Auto. Ins. Co*., 115 F.3d 230, 233 (3d Cir. 1997) (citing *Terletsky v. Prudential Prop. & Cas. Ins. Co*., 437 Pa. Super. 108, 649 A.2d 680, 688 (1994)). Nor can Amerco predicate its bad faith and unfair trade practices claims on First American's initial denial of coverage. The denial was accompanied by a lengthy and not unreasonable explanation for its decision, and it is well-established that an insurer's refusal to pay benefits under a policy and the communication of its reasons for denying coverage constitute nonfeasance and do not give rise to liability under Pennsylvania's unfair trade practices statute. *See Gordon v. Pa. Blue Shield,* 378 Pa. Super. 256, 548 A.2d 600, 604 (1988); *see also*

---

[2] Amerco's claims for contractual and tortious breach of the covenant of good faith and fair dealing must also be dismissed because it fails to respond to First American's argument that Pennsylvania does not recognize either claim. (*See* Doc. 8 p. 14.)

*Horowitz v. Fed. Kemper Life Assur. Co.*, 57 F.3d 300, 307 (3d Cir. 1995) ("In Pennsylvania, only malfeasance, the improper performance of a contractual obligation, raises a cause of action under the [UTPCPL] and an insurer's mere refusal to pay a claim which constitutes nonfeasance, the failure to perform a contractual duty, is not actionable"). The complaint will therefore be dismissed with prejudice.

## IV.   **CONCLUSION**

For the reasons set forth above, Defendant First American Title Insurance Company's motion will be granted and the complaint will be dismissed with prejudice.

Dated: April 4, 2022

> */s/ Sylvia H. Rambo*
> SYLVIA H. RAMBO
> United States District Judge